IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RICHARD CHRIST, | ) |
| *Plaintiff*, | ) |
| v. | ) Civil Action No. 1:24-cv-1548 (PTG/WEF) |
| DEPOSITORS INSURANCE COMPANY, | ) |
| *Defendant*. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on the parties' Cross-Motions for Summary Judgment. Dkts. 15, 18. Plaintiff Richard Christ ("Plaintiff") filed this suit against Defendant Depositors Insurance Company ("Defendant" or "Depositors") in connection to insurance coverage for Plaintiff's October 5, 2021 motor vehicle accident while driving a rental vehicle. Dkt. 1-1. Plaintiff seeks a declaratory judgment that Texas law requires Defendant to provide uninsured motorist coverage for the accident under an insurance policy ("the Policy") between Defendant and Plaintiff's business and employer, Redco Distribution, LLC ("Redco"). *Id.* It is undisputed that while the Policy explicitly provides uninsured/underinsured motorist coverage ("UM/UIM") for "vehicles specifically identified in the Policy," it does not cover non-owned vehicles such as rental vehicles. Dkt. 16 at 1.

The principal issue for this Court's review is whether Texas Insurance Code § 1952.101, which sets out requirements for UM/UIM coverage in insurance policies, mandates UM/UIM coverage for Plaintiff's accident. Defendant contends that § 1952.101 does not "requir[e] the UM/UIM coverage that Plaintiff seeks," especially where the Policy comports with the statute by including some UM/UIM coverage. Dkt. 16 at 4. Plaintiff avers that the public policy rationale

and precedent underlying § 1952.101 warrants a broad reading, whereby an insured must receive UM/UIM coverage in all circumstances absent a written rejection allowing the insurer to limit it. Dkt. 19 at 3-6. Both parties seek summary judgment on their respective positions. Dkts. 15, 18. For the reasons that follow, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## I.  FACTUAL BACKGROUND[1]

Plaintiff owns and is employed by Redco. Pl. Statement of Additional Material Facts ("PSOF"), Dkt. 19 ¶ 2.[2] Defendant issued an insurance policy to Redco that was effective between November 4, 2020 and November 4, 2021 and provided a $1,000,000 combined single limit. Def. Statement of Facts ("DSOF"), Dkt. 16 ¶ 6. Plaintiff is listed as "driver 00001" on the Policy's Driver Schedule. PSOF ¶ 3; Dkt. 21 at 2 (agreeing with fact).

The Policy provides liability coverage for specifically described autos, hired autos, and non-owned autos.[3] Dkt. 19-1 ("Policy") at 16, 27; *see also* PSOF ¶ 4; Dkt. 21 at 2. The Policy

---

[1] The material facts in this case were not in dispute and were borne out by the record. Plaintiff admitted or conceded much of Defendant's Undisputed Material Facts. *See* Dkt. 19 at 2 ("Plaintiff agrees with all of Depositors' undisputed material facts."). Similarly, Defendant admitted or conceded much of Plaintiff's Undisputed Material Facts. *See* Dkt. 21 at 2-3. Any disputed facts are noted herein but were immaterial or irrelevant to the disposition of the issues in this case.

[2] Defendant does not dispute this fact but notes it "does not have sufficient information to agree or disagree," and that "Plaintiff's ownership of the company is not relevant to the issues before the Court." Dkt. 21 at 2.

[3] The Policy initially defines "specifically described autos" as "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown." Dkt. 19-1 at 27 ("Business Auto Coverage Form"); *see id.* at 22 ("Item Three Declarations – Schedule of Covered Autos You Own"). An endorsement modified the definition to "[o]nly those 'autos' described in Item Three of the Declarations if a premium and a limit are shown in Item Two of the Declarations for MEDICAL PAYMENTS, UNINSURED MOTORISTS, or UNDERINSURED MOTORISTS Coverage." *Id.* at 48 ("Amendment of Covered Auto Symbol 7").

2

also provides UM/UIM coverage for specifically described autos, referring to "vehicles specifically identified in the Policy," but not for hired autos or non-owned autos. DSOF ¶¶ 7-8.[4] Redco paid a "specific premium" for UM/UIM coverage for specifically described autos. *Id.* ¶ 9. Furthermore, "Redco did not sign a written rejection for UIM coverage" for hired autos and non-owned autos. PSOF ¶ 5; Dkt. 21 at 2.[5]

On October 5, 2021, Plaintiff was involved in a car accident in Fairfax County, Virginia while driving a rental car in connection with his employment at Redco. DSOF ¶¶ 1-3. The rental vehicle was neither owned by Redco nor identified in the Policy. *Id.* ¶¶ 4-5. Nor was the vehicle "being temporarily used as a substitute for a covered auto that was being repaired." *Id.* ¶ 5. "The liability insurance company for the tortfeasor offered $84,975.67" after the accident.[6] PSOF ¶ 7.

On August 7, 2024, Plaintiff filed suit against Defendant in the Virginia Circuit Court for Fairfax County, seeking declaratory judgment on the scope of the Policy's coverage with respect to the car accident. Dkt. 1-1. On September 3, 2024, Defendant filed a Notice of Removal to this

---

The Policy defines "hired autos" as "[o]nly those 'autos' you lease, hire, rent or borrow. This does not include any 'auto' you lease, hire, rent or borrow from any of your 'employees,' partners (if you are a partnership), members (if you are a limited liability company) or members of their households." *Id.* at 27.

The Policy defines "non-owned autos" as "[o]nly those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees', partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs." *Id.*

[4] The "vehicles specifically identified in the Policy" are listed under the Item Three Declarations of the Policy. Dkt. 19-1 at 22.

[5] While "Depositors agrees that Redco did not sign a written rejection of UM/UIM coverage," it "disputes the assertion in Plaintiff's statement of facts that a written rejection is required to limit UM/UIM coverage to vehicles specifically identified under the Policy." Dkt. 21 at 2.

[6] Defendant denies that this fact is undisputed because it "does not have sufficient information to agree or disagree." Dkt. 21 at 2. Defendant, however, did not point to any evidence to dispute it.

3

Court. Dkt. 1. The parties engaged in discovery until January 10, 2025. Dkt. 11. On January 21, 2025, Defendant filed its Motion for Summary Judgment. Dkt. 15. Plaintiff filed a Cross-Motion for Summary Judgment on February 4, 2025. Dkt. 18. On July 11, 2025, this Court held a hearing on the motions. Dkt. 35.

## II.  LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists if "after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). For the dispute of material fact to be "genuine," "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that burden, "the non-moving party must demonstrate through the pleadings and subsequent discovery materials that a genuine issue for trial does exist." *Shover v. Chestnut*, 798 F. App'x 760, 761 (4th Cir. 2020). To do so, the party must "offer 'sufficient proof in the form of admissible evidence' instead of 'relying solely on the

4

allegations of [its] pleadings.'" *Est. of Alvarez v. Rockefeller Found.*, 96 F.4th 686, 693 (4th Cir. 2024) (quoting *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022)). The nonmovant "cannot create a genuine issue of material fact through mere speculation or the building on one inference upon another." *Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1260 (4th Cir. 1993) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

When considering summary judgment, a court must "always accept the facts in the light most favorable to the nonmoving party." *Williamson v. Stirling*, 912 F.3d 154, 178-79 (4th Cir. 2018). The court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Moreover, where "cross-motions for summary judgment are before a court, the court examines each motion separately." *T.H.E. Ins. Co. v. Davis*, 54 F.4th 805, 818 (4th Cir. 2022) (quoting *Fusaro v. Howard*, 19 F.4th 357, 366 (4th Cir. 2021)). "In considering each motion, the Court will resolve any factual disputes and 'competing, rational inferences' in the light most favorable to the opposing party." *Reynolds v. USAA Life Ins. Co.*, 678 F. Supp. 3d 736, 740 (E.D. Va. 2023), *aff'd*, 2024 WL 2795185 (4th Cir. May 31, 2024) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

### B. Relevant Legal Authorities

Texas law governs this dispute. When a court acts under diversity jurisdiction, it "must apply the choice-of-law principles of the forum state in which it sits." *Fountain Enters., LLC v. Markel Ins. Co.*, 568 F. Supp. 3d 613, 619 (E.D. Va. 2021), *aff'd*, 2022 WL 16630571 (4th Cir. Nov. 2, 2022). Under Virginia choice-of-law rules, "the law of the place where an insurance contract is written and delivered controls issues as to its coverage." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993). Both parties agree "that the Policy was written and delivered in Texas." Dkt. 16 at 4; *see also* Dkt. 19 at 3.

"[A] federal court acting under its diversity jurisdiction should respond conservatively when asked to discern governing principles of state law." *Koppers Performance Chems., Inc. v. Argonaut-Midwest Ins. Co.*, 105 F.4th 635, 640 (4th Cir. 2024) (quoting *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011)). The court "should not interpret state law in a manner that may appear desirable to the federal court, but has not been approved by the state whose law is at issue" and "must, instead, 'predict' how the state's highest court would rule on the state law issue in question."[7] *Id.* (citing *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022)).

Section 1952.101 of the Texas Insurance Code, effective on April 1, 2007, governs UM/UIM coverage requirements.[8] Tex. Ins. Code Ann. § 1952.101 (2007). Texas courts have

---

[7] Most decisions interpreting UM/UIM coverage laws in Texas emerge from the appellate courts, especially in recent years following the enactment of § 1952.101. It is relevant that "the supreme court has had several opportunities to correct any misstatement of the law as set out by the intermediate appellate courts of this state, yet has not done so." *Conlin v. State Farm Mut. Auto. Ins. Co.*, 828 S.W.2d 332, 336 (Tex. App. 1992), *writ denied* (Tex. Dec. 31, 1992).

[8] Plaintiff and Defendant frequently rely on case law and legislative history concerning earlier iterations of § 1952.101, which was enacted in 2007. Notably, the prior version of the law, Arts. 5.06-1 and 5.06-2 of the Texas Insurance Code, employed substantially similar language to § 1952.101:

> No automobile liability insurance . . . covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury . . . resulting therefrom. The coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage in writing . . .

Contemporary cases interpreting § 1952.101 frequently cite to precedent interpreting the laws earlier, and now repealed, versions. *See e.g., Progressive Cnty. Mut. Ins. Co. v. Freeman*, 694 S.W.3d 924, 928 (Tex. App. 2024) (relying on pre-2007 case law to state the public policy rationales of UM/UIM coverage); *Progressive Cnty. Mut. Ins. Co. v. Saldivar*, 712 S.W.3d 691, 696 (Tex. App. 2025) (same); *Progressive Cnty. Mut. Ins. Co. v. Caltzonsing*, 658 S.W.3d 384, 397 (Tex. App. 2022) (same). Because the statutes share a policy purpose and language, and there is limited existing case law on § 1952.101, pre-2007 case law is relevant to the Court's analysis of § 1952.101.

stated that "[t]he right to recover UIM damages is governed by statute" and does not raise "straight-forward insurer-insured first-party claims because [they] . . . are conditioned upon the insured's legal entitlement to receive damages from a third party." *In re Progressive Cnty. Mut. Ins. Co.*, 622 S.W.3d 91, 97 (Tex. App. 2020).

### III. DISCUSSION

Although Defendant characterizes the instant case as one of contract interpretation, it is undisputed that the Policy does not provide UM/UIM coverage for the rental vehicle that Plaintiff was driving at the time of the accident. Dkt. 21 at 3. Rather, the fundamental dispute between the parties is whether Texas law requires UM/UIM coverage for non-owned vehicles in the absence of a written rejection, such that Defendant must provide coverage for Plaintiff's accident.[9]

Defendant argues that while Tex. Ins. Code Ann. § 1952.101 requires that automobile liability insurance provide "uninsured or underinsured motorist coverage," it does not require UM/UIM "for vehicles covered by non-owned or hired automobile liability insurance." Dkt. 16 at 4. Defendant further contends that the Texas Insurance Code does not require an insured party to provide a written rejection "limiting the UM/UIM coverage under the Policy" where the Policy "did provide UM/UIM coverage." *Id.* at 7. According to Defendant, coverage here "would permit an insured to obtain insurance and pay premiums 'based solely on the risk attendant to one vehicle, and thereby render the insurer liable for injuries sustained in or because of other vehicles.'" *Id.* at

---

[9] In its Reply, Defendant avers that it is disputed whether Plaintiff is an "insured." Dkt. 21 at 2. However, Defendant made no such claim in its original brief. Furthermore, Defendant presumes at several points that Plaintiff is insured. *See* Dkt. 16 at 7 (claiming, for instance, "Plaintiff is presumed to have read the Policy" because case law dictates "a named insured is presumed to have read its policy"); Dkt. 21 at 3. "A party waives an argument by failing to present it in its opening brief." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). The Policy is also clear in multiple provisions that Plaintiff, as an employee of Redco, is "insured." Dkt. 16-1 at 23, 35, 54. Accordingly, the Court finds that Plaintiff is an "insured" under the Policy.

7

5 (quoting *Holyfield v. Members Mut. Ins. Co.*, 566 S.W.2d 28, 29 (Tex. Civ. App. 1978), *writ denied*, 572 S.W.2d 672 (Tex. 1978) (per curiam)). Conversely, Plaintiff argues that the underlying public policy of § 1952.101(a)'s UM/UIM requirement warrants a broad reading of who is insured under UM/UIM coverage. Dkt. 19 at 8. On Plaintiff's read, Texas insurance law permits UM/UIM coverage limits only where the insured provides a "clear and express rejection" of coverage to the insurer, without which "UM/UIM will apply as a matter of law." *Id.* at 9-10.

The Court agrees with Defendant that the Policy does not require UM/UIM coverage in this instance. First, the Court addresses whether the Policy's UM/UIM coverage for scheduled vehicles, but not non-owned or hired vehicles, comports with the statute. Second, the Court determines whether a written rejection is needed for Defendant to validly limit UM/UIM coverage.

### A. Whether the Policy Comports With Texas Insurance Law

Under Texas law, "[p]olicy provisions, even if approved by the department of insurance, are invalid if they are inconsistent with express statutory requirements or purposes." *Ibarra v. Progressive Cnty. Mut. Ins. Co.*, 2012 WL 117955, at *2 (Tex. App. Jan. 12, 2012). Furthermore, where an automobile policy improperly limits UM/UIM coverage, the coverage must apply "by operation of law." *Howard v. INA Cnty. Mut. Ins. Co.*, 933 S.W.2d 212, 218 (Tex. App. 1996).

The Court finds that the Policy's provision of UM/UIM coverage for scheduled vehicles—but not for non-owned and hired vehicles—is proper under Texas law. At the outset, Texas courts have been clear that "UM/UIM coverage 'need not afford protection in every situation' involving uninsured or underinsured motorists." *Progressive Cnty. Mut. Ins. Co. v. Freeman*, 694 S.W.3d 924, 928 (Tex. App. 2024) (citing *Bergensen v. Hartford Ins. Co. of the Midwest*, 845 S.W.2d 375, 377 (Tex. App. 1992)). Moreover, as a matter of statutory interpretation, the public policy

8

rationales undergirding § 1952.101 do not warrant additional UM/UIM coverage for non-owned and unscheduled vehicles.

Under Texas law, "the overriding goal of statutory interpretation" is to "[d]etermin[e] legislative intent" based on "the plain and common meaning of the words used by the legislature." *Taylor v. State Farm Lloyds, Inc.*, 124 S.W.3d 665, 670 (Tex. App. 2003) (citations omitted). Courts have required UM/UIM coverage "to be construed liberally to give full effect to the public policy which led to its enactment." *Freeman*, 694 S.W.3d at 928 (quoting *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 382 (Tex. 1989)); *see Ortiz v. State Farm Mut. Auto. Ins. Co.*, 955 S.W.2d 353, 356 (Tex. App. 1997). The longstanding public policy rationale underlying Texas's UM/UIM coverage laws seeks to "protect conscientious motorists from financial loss caused by negligent financially irresponsible motorists." *Progressive Cnty. Mut. Ins. Co. v. Caltzonsing*, 658 S.W.3d 384, 397 (Tex. App. 2022) (citing *Stracener*, 777 S.W.2d at 382); *see also Emps. Cas. Co. v. Sloan*, 565 S.W.2d 580, 584 (Tex. Civ. App. 1978); *Jankowiak v. Allstate Prop. & Cas. Ins. Co.*, 201 S.W.3d 200, 210 (Tex. App. 2006). Consistent with this longstanding rationale, § 1952.101(a) makes clear the law "protects insureds who are legally entitled to recover from owners or operators of uninsured or underinsured motor vehicles."

At face value, the plain text of § 1952.101 is ambiguous as to the scope of UM/UIM coverage. In relevant part, § 1952.101(b) states:

> An insurer may not deliver . . . an automobile liability insurance policy . . . that covers liability arising out of the ownership, maintenance, or use of any motor vehicle unless the insurer provides uninsured or underinsured motorist coverage in the policy or supplemental to the policy.

Both parties' readings are plausible on the face of the text. On one hand, the language requires UM/UIM coverage "in the policy" but does not specify that it must cover the same scope of that policy. *See Old Am. County Mut. Fire Ins. Co. v. Sanchez*, 149 S.W.3d 111, 115 (Tex. 2004)

9

("[B]ecause we presume that every word of a statute has been included or excluded for a reason, we will not insert requirements that are not provided by law."). On the other hand, a liberal construction of the statute could suggest that by requiring UM/UIM motorist coverage "in the policy," the legislature intended the UM/UIM coverage to directly refer back to the scope of liability policy for "ownership, maintenance, or use of **any** motor vehicle." § 1952.101(b) (emphasis added). Accordingly, this Court cannot resolve this matter on the "clear language of the statute" and must look to the public policy rationale. *See Taylor*, 124 S.W.3d at 670.

Texas law has been clear that when assessing UM/UIM exclusions, courts must take a "case-by-case" approach to determine whether the exclusion violates public policy. *Caltzonsing*, 658 S.W.3d at 401. Neither party cites to any case law expressly considering limitations to UM/UIM coverage for non-owned and hired vehicles. However, this Court looks to precedent in Texas courts to ascertain the contours of the law's public policy rationales. In doing so, the Court finds that the limitations to UM/UIM coverage for Plaintiff's rental car are appropriate under the law's public policy.

Several state courts have upheld exclusions to UM/UIM coverage where the exclusion did not frustrate the public policy of protecting against a "financially irresponsible" tortfeasor. *See Francis v. Int'l Serv. Ins. Co.*, 546 S.W.2d 57, 61 (Tex. 1976) (holding sovereign immunity exclusion did not contravene public policy because government actor was not "financially irresponsible"); *Charida v. Allstate Indem. Co.*, 259 S.W.3d 870, 876-77 (Tex. App. 2008) (holding family member exclusion to UM/UIM acceptable because family member is not considered financially irresponsible); *Bergensen*, 845 S.W.2d at 376-77 (holding family member exclusion does not violate public policy because public policy rationale protects against the negligence of strangers rather than family members).

10

Courts have also consistently stated that UM/UIM law does not require an insurer to provide UM/UIM coverage to insureds who "pay premiums based solely on the risks attendant to one vehicle" but seek to "recover from the insurer for injuries sustained in or because of a different, unscheduled vehicle owned by the insured." *Conlin v. State Farm Mut. Auto. Ins. Co.*, 828 S.W.2d 332, 337 (Tex. App. 1992), *writ denied* (Dec. 31, 1992); *see also Berry v. Texas Farm Bureau Mut. Ins. Co.*, 782 S.W.2d 246, 247 (Tex. App. 1989) (collecting cases upholding exclusions to uninsured motorist coverage); *Doughten v. State Farm Mut. Auto Ins. Co.*, 2002 WL 261522, at *3 (5th Cir. Feb. 6, 2002) (stating that "the Texas Supreme Court has held such [owned-but-unscheduled vehicle exclusion] clauses valid" under UM/UIM coverage laws while interpreting Texas law). Since the enactment of §1952.101, Texas courts have continued to rely on these precedents to uphold exclusions to UM/UIM coverage for uncovered autos. *See Ibarra v. Progressive Cnty. Mut. Ins. Co.*, 2012 WL 117955, at *4 (Tex. App. Jan. 12, 2012).

Accordingly, the Court finds that Texas law does not require Defendant to provide UM/UIM coverage for the rental vehicle here. Because Texas law consistently upholds exclusions to UM/UIM coverage for owned-but-unscheduled vehicles, it is unlikely the Texas Supreme Court would reject an exclusion for a *non-owned* and unscheduled vehicle. *See Koppers*, 105 F.4th at 640 (quoting *Knibbs*, 30 F.4th at 213) (stating federal courts interpreting state law "must . . . 'predict' how the state's highest court would rule on the state law issue in question").

Moreover, public policy reasons do not warrant coverage here. It is relevant that Plaintiff seeks coverage that was not paid for, especially where Redco paid specific premiums on UM/UIM coverage for the vehicles identified in the Policy. *See Conlin*, 828 S.W.2d at 337 (holding public policy does not require that an insurer provide UM to insureds who "pay premiums based solely on the risks attendant to one vehicle" but seek to "recover from the insurer for injuries sustained

11

in or because of a different, unscheduled vehicle owned by the insured"). Accordingly, the Court finds that the Policy as it stands satisfies the requirements of UM/UIM coverage under § 1952.101.

### B. Whether a Written Rejection was Required for the Limitation

The next question for the Court to address is whether any limitation to UM/UIM coverage for non-owned and hired vehicles requires a written rejection to be valid under Texas law. Plaintiff contends that *any* limitations to UM/UIM coverage require a written rejection first. Dkt. 19 at 9. Under § 1952.101(c), "[t]he coverage required by this subchapter does not apply if any insured named in the insurance policy rejects the coverage in writing." While courts strictly construe the written rejection exception to protect the insured, they do so in the context of determining what satisfies a written rejection. *Howard*, 933 S.W.2d at 218 (finding that the insured's failure to select a coverage option did not amount to a written rejection of coverage); *see also id.* ("Although a written rejection is mandatory, the statute does not require a special procedure or special language for the writing."); *Sloan*, 565 S.W.2d at 583 (requiring rejection of UM/UIM coverage must be in writing). Because the Court finds that UM/UIM coverage is not required for non-owned and hired vehicles under this subchapter, the Court also concludes that no written rejection is required.

### IV.   CONCLUSION

Accordingly, for the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.

A separate Order will issue.

Entered this ___ day of September, 2025
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge

12